IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Adrian Tyrell Eaglin, | ) | C/A No. 0:08-2547-TLW-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| Mr. James Metts, Sheriff; ABL Management, Inc.; | ) | |
| Sgt. Barrington Butler; Sgt. Linda Mickens; Ofc. | ) | |
| Troy Hall; Ofc. Isaac Jackson; Ofc. Jeff Derrick; | ) | |
| Ofc. Donyelle Williams; Sgt. Valerie Allen; Ofc. | ) | |
| Floyd Hopkins; Ofc. C.O. Coleman; Doctor Lance | ) | |
| Williams; Nurse Kim Christie; Jane/John Doe, | ) | |
| Prison Health Services, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

      The plaintiff, Adrian Tyrell Eaglin ("Eaglin"), who at the time of the incident giving rise to this action was a pre-trial detainee at the Lexington County Detention Center, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983. The defendants include the Sheriff of Lexington County, James Metts; various employees of the Lexington County Detention Center, including Defendants Butler, Mickens, Hall, Jackson, Derrick, Williams, Allen, Hopkins, and Coleman; and Kim Christie, a nurse employed by a third-party private corporation that provides medical care to detainees and prisoners.[1] All defendants have moved for summary judgment on Eaglin's various claims, all of which arise out of events occurring January 18, 2008. Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Eaglin of the summary judgment and dismissal procedures and

---

      [1] It appears that Defendants ABL Management, Doctor Lance Williams, and Jane/John Doe, Prison Health Services, were never properly served pursuant to Federal Rule of Civil Procedure Rule 4(m). Accordingly, these defendants are not proper parties to this action and should be dismissed. The court further notes that Defendant Christie is represented by separate counsel than Defendants Metts, Butler, Mickens, Hall, Jackson, Derrick, Williams, Allen, Hopkins, and Coleman. The court will refer to Sheriff Metts and the employees of the Detention Center as the "Detention Center Defendants" to distinguish them from Defendant Christie.

the possible consequences if he failed to respond adequately to the defendants' motions. (Docket Entries 64 & 92.) Eaglin filed responses in opposition to the defendants' motions. (Docket Entries 84 & 96.) The Detention Center Defendants filed a reply. (Docket Entry 104.) Additionally, the Detention Center Defendants supplemented their motion for summary judgment with new information. (Docket Entry 116.) This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motions. Having carefully reviewed the parties' submissions, the court finds that the defendants' motions (Docket Entries 62 & 90) should be granted.

## BACKGROUND

In support of their motions for summary judgment, the defendants have presented evidence establishing the following facts. While Eaglin's Complaint includes additional background information, he has presented no evidence refuting the defendants' proof, and the court considers these facts to be undisputed.

In the early morning of January 18, 2008, Eaglin created a major disturbance by banging on his cell door and screaming as well as succeeding in getting all of the inmates in the C-Wing housing unit to bang and kick on their doors. (Derrick Aff. ¶¶ 34-35, Docket Entry 90-7 at 5; Williams Aff. ¶ 18, Docket Entry 90-11 at 3.) Eaglin ignored Defendant Butler's repeated instructions to stop, and Defendant Butler determined that Eaglin would need to be placed in a restraint chair until he could calm down. (Butler Aff. ¶¶ 23-25, Docket Entry 90-6 at 3-4.) Defendants Hall and Jackson entered Eaglin's cell to remove Eaglin while Defendants Williams and Derrick secured and removed Eaglin's cellmate. (Jackson Aff. ¶ 16, Docket Entry 90-10 at 3; Derrick Aff. ¶¶ 46-47, Docket Entry 90-7 at 6-7; Williams Aff. ¶¶ 46-47, Docket Entry 90-11 at 6-7.) Eaglin became combative. During

this process, Eaglin struck Defendants Hall and Jackson.[2]  (Jackson Aff. ¶¶ 17-26, Docket Entry 90-10 at 3-4; Hall Aff. ¶¶ 17-23, Docket Entry 90-9 at 3-4.)  Ultimately, Defendant Butler deployed a taser to restrain and control Eaglin.  (Butler Aff. ¶¶ 32-37, Docket Entry 90-6 at 4-5; Jackson Aff. ¶¶ 27-30, Docket Entry 90-10 at 4; Hall Aff. ¶¶ 27-30, Docket Entry 90-9 at 4-5.)

After Eaglin was secured in the restraining chair, he was taken to the medical area where he was examined and treated for cuts on his nose and mouth.  (Butler Aff. ¶¶ 39-42, Docket Entry 90-6 at 5; Compl., Docket Entry 1 at 11.)  Eaglin was placed in a different cell by himself on the first floor in full restraints.  (Butler Aff. ¶¶ 42-43, Docket Entry 90-6 at 5-6.)

Later that same day, Defendant Hopkins received an order to move Eaglin to the medical area.  (Hopkins Aff. ¶ 12, Docket Entry 90-8 at 2.)  During the process of transporting Eaglin, Eaglin tripped on the chain of his leg restraints and fell.  (Hopkins Aff. ¶¶ 13-15, Docket Entry 90-8 at 3.)  Eaglin informed Defendant Hopkins that he was injured and then began to twitch from the waist down.  (Hopkins Aff. ¶¶ 16-18, Docket Entry 90-8 at 3.)  Medical staff was called to the scene, where Eaglin was lying on his right side, moaning and grunting.  (Hopkins Aff. ¶¶ 18-19, Docket Entry 90-8 at 3; Compl., Docket Entry 1 at 13.)  He had apparently defecated.  Eaglin resisted attempts to place him in a wheelchair to transport him to the medical area but Defendants Hopkins and Coleman eventually placed Eaglin in the wheelchair took him to the medical intake area.  (Hopkins Aff. ¶¶ 20-22, Docket Entry 90-8 at 4; Coleman Aff. ¶¶ 12-13, Docket Entry 90-5 at 2; Allen Aff. ¶ 18, Docket Entry 90-13 at 3.)  When they arrived at the intake area, Defendant Allen instructed them to return Eaglin to his cell due to the fact that female inmates were currently having sick call at the medical area.  Defendant Allen informed them that the medical staff would see Eaglin

_____

[2]  Eaglin was criminally charged with two counts of assault upon an employee of a correctional facility.  (Docket Entry 90-3 at 108-115.)  Eaglin was convicted and sentenced on both counts on August 25, 2009.  (Docket Entry 116-1.)

in his cell.  (Allen Aff. ¶¶ 18-19, Docket Entry 90-13 at 3-4; Hopkins Aff. ¶¶ 22-23, Docket Entry 90-8 at 4; Coleman Aff. ¶¶ 13-14, Docket Entry 90-5 at 2.)  Defendants Hopkins and Coleman offered Eaglin a new uniform and the opportunity to shower and clean himself, which Eaglin refused. (Hopkins Aff. ¶ 24, Docket Entry 90-8 at 4; Coleman Aff. ¶ 15, Docket Entry 90-5 at 2-3.)  Eaglin was ultimately placed back in his cell.  (Coleman Aff. ¶ 16, Docket Entry 90-5 at 3; Progress Notes, Docket Entry 90-3 at 11.)

Eaglin was monitored by medical staff while he remained in full restraints over the next two days.  (Progress Notes, Docket Entry 90-3 at 11-12; Inmate Observation Form, Docket Entry 90-3 at 13-16.)  On January 22, 2008, Eaglin was given a mental evaluation where it was determined that he did not appear homicidal or suicidal and showed no symptoms of psychosis.  (Med. Records, Docket Entry 90-3 at 46-48.)  Medical staff determined that Eaglin had not experienced a seizure and ordered that his jaw be x-rayed.  (Med. Records, Docket Entry 90-3 at 49.)  X-rays were performed on January 30, February 11, and February 19.  (Med. Records, Docket Entry 90-3 at 20-21, 25.) Although all x-rays were negative, Eaglin continued to complain of jaw pain and contended that it affected his ability to eat.  Eaglin's diet was adjusted to graduate from a liquid diet to soft foods. (Med. Records, Docket Entry 90-3 at 28-32, 43.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates entry of summary judgment "against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Eleventh Amendment Immunity**

As an initial matter, the Detention Center Defendants correctly assert that to the extent they are sued in their official capacities, they are immune from suit in this court. As arms of the state, they are entitled to sovereign immunity and are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity,

Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent the Detention Center Defendants are sued in their official capacity, they are immune from suit, as they are treated as "arms of the State" in this capacity. Will, 491 U.S. at 70-71; Gulledge v. Smart, 691 F. Supp. 947, 954 (D.S.C. 1988) (holding that both sheriffs and deputy sheriffs are agents of the State and immune from suit); see also Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992) (stating that the sheriff and his employees are state officials).

## C. Exhaustion of Administrative Remedies

All of the defendants contend that this matter should be dismissed because Eaglin has not exhausted his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[3] This requirement "applies to all inmate suits about prison life, whether they involve general circumstance or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See Booth v. Churner, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286

---

[3] Pretrial detainees are specifically included in this requirement pursuant to § 1997e(h), which defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law."

F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Here, the defendants have presented evidence that the Lexington County Detention Center has a grievance procedure. (O'Neill Aff. ¶ 19, Docket Entry 90-2 at 3; see also Compl., Docket Entry 1 at 2.) That procedure requires that a detainee appeal the denial of an initial grievance through various channels, culminating with the jail administrator. (O'Neill ¶¶ 20-22, Docket Entry 90-2 at 3.) Eaglin's submissions do not refute the defendants' evidence that he failed to avail himself fully of this appeals process. Accordingly, it does not appear that he has properly exhausted the administrative remedies provided by the Detention Center, and his claims must be dismissed pursuant to 42 U.S.C. § 1997e(a) and Woodford, 548 U.S. at 90.

Although Eaglin's § 1983 claims against Defendant Christie also must be dismissed for failure to exhaust administrative remedies, the court observes that Defendant Christie's argument as to this issue is flawed. She contends that to properly exhaust his administrative remedies, Eaglin was required to seek appellate review by the South Carolina Administrative Law Court. Christie is incorrect. The Administrative Law Court is an executive-branch court that generally reviews, pursuant to the state Administrative Procedures Act, certain decisions of state administrative agencies prior to a litigant's seeking judicial review from the state appellate courts. See S.C. Code Ann. § 1-23-500 ("There is created the South Carolina Administrative Law Court, which is an agency and court of record within the executive branch of the government of this State."); § 1-23-610(A)(1) (providing for judicial review of a final decision of the Administrative Law Court by the

South Carolina Court of Appeals). While *state* prisoners are required, for certain types of claims, to seek review by the Administrative Law Court in order to fully exhaust their administrative remedies, this requirement derives from the internal grievance policy of the South Carolina Department of Corrections and state law. See Jones, 549 U.S. at 218 (stating that exhaustion procedures are determined by the facility, not the PLRA); Al-Shabazz v. State, 527 S.E.2d 742 (S.C. 2000) (providing for review by the Administrative Law Court of certain decisions of the Department of Corrections); S.C. Code Ann. § 1-23-600(D) (conferring authority on the Administrative Law Court to preside over all appeals from final decisions of certain state agencies including the Department of Corrections). By contrast, there appears to be no state law providing for review by the Administrative Law Court of county detention center decisions with regard to pre-trial detainees.[4] Accordingly, it appears that under South Carolina law and—based on this record—the grievance policy of the Lexington County Detention Center, the jail administrator was the last stop to exhaust administrative remedies for Eaglin. Since he failed to appeal to the jail administrator, however, his claims are nonetheless barred.

D.    **Merits of Eaglin's Claims**

Even if Eaglin had properly exhausted his administrative remedies, his claims would nonetheless fail.

1.    **Claims Regarding Disciplinary Convictions**

Eaglin's claims regarding his disciplinary convictions are barred. A plaintiff cannot recover damages on a § 1983 civil rights claim for an allegedly unconstitutional conviction without first having that conviction reversed, expunged, or called into question by a writ of habeas corpus. Heck

_____

[4] Although the Administrative Law Court does review certain county tax decisions, this jurisdiction is specifically conferred by state law. S.C. Code Ann. § 12-60-2540.

v. Humphrey, 512 U.S. 477, 486-87 (1994). The rule in Heck applies to prison disciplinary convictions as well as criminal ones. Edwards v. Balisok, 520 U.S. 641 (1997). The Supreme Court has further observed that the holdings of Heck and Balisok, taken together,

> indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). Because Eaglin did not obtain a ruling from the jail administrator invalidating his prison disciplinary convictions, nor obtain a writ of habeas corpus from a federal court calling those disciplinary convictions into question, he cannot yet recover damages in a § 1983 action, since success on the § 1983 claim would necessarily demonstrate invalidity of the convictions. See id.

### 2. Excessive Force Claim

An excessive force claim of a pretrial detainee arises under the Fourteenth Amendment. Orem v. Rephann, 523 F.3d 442, 445 (4th Cir. 2008). In evaluating a claim for excessive force, the issue is whether the defendant "inflicted unnecessary and wanton pain and suffering." Id. at 446 (citing Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998)). In answering the question of whether this constitutional line had been crossed, the following factors are relevant: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm. Id. at 446 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In Orem, the United States Court of Appeals for the Fourth Circuit addressed the specific question of the use of a taser on a pretrial detainee. Id. Under the facts presented in Orem, the

Fourth Circuit found that a reasonable jury could find that the defendant's use of the taser was unconstitutional. Orem, 523 F.3d 442. Important to the Fourth Circuit's conclusion were the facts that Orem was a 100-pound female who, at the time the taser was used, was already restrained via a cage in the back of a patrol car as well as a "hobbling device" type of leg restraint; that the defendant had tased Orem in very sensitive areas including under her left breast and on her inner thigh, even though the right side of her body was closer to him; and that the defendant tased Orem in response to unruly behavior and profanity directed toward him, telling Orem after he tased her that she needed to respect him. Id. at 444-45 , 447. Further, the Court observed that Orem had been arrested in connection with a domestic dispute and that the defendant knew Orem's husband. Id. at 444 , 446, & n.3. Finally, the taser left Orem with a permanent, sunburn-like scar on her inner thigh. Id. at 445. Presented with these facts, the Orem Court found that a jury could conclude that the defendant's use of the taser was not a good faith effort to restore discipline, but rather an "unnecessary and wanton infliction of pain." Id. at 447. Finally, the Orem Court held that the defendant was not entitled to qualified immunity. Id. at 449.

The facts in Orem vastly differ from those presented here. Although Eaglin expresses his belief that the tasing and physical force used by Defendants Hall, Jackson, and Butler was excessive, he does not (or cannot) dispute certain materially distinguishable facts. First, unlike in Orem, the potential need for force was heightened based on the fact that Eaglin refused to obey direct orders and became combative when the guards entered his cell to restrain him. The need for force escalated further when Eaglin struck Defendants Jackson and Hall multiple times with a closed fist.[5] (Jackson

---

[5] As Eaglin has been convicted by a jury beyond a reasonable doubt for two counts of assault upon an employee of a correctional facility, (see Docket Entry 116-1), he cannot now dispute that fact. United States v. Wight, 839 F.2d 193, 196 (4th Cir. 1987) (applying the doctrine of collateral estoppel to issues litigated in a criminal case to a subsequent civil proceeding).

Aff. ¶¶ 17-26, 36, Docket Entry 90-10 at 3-4, 5; Hall Aff. ¶¶ 17-23, 36, Docket Entry 90-9 at 3-4, 5.) Defendant Jackson attests that after he was struck in the face the second time, he struck Eaglin in self-defense. (Jackson Aff. ¶ 23, Docket Entry 90-10 at 4.) Defendants Jackson and Hall aver that they regained control of Eaglin by "taking him to the ground"; however, Eaglin continued to flail and resist, attempting to free his arms and kicking his legs. (Jackson Aff. ¶¶ 25-26, Docket Entry 90-10 at 4; Hall Aff. ¶¶ 25-26, Docket Entry 90-9 at 4.) Defendant Butler then instructed Eaglin to calm down and quit resisting. (Butler Aff. ¶ 32, Docket Entry 90-6 at 4; Jackson Aff. ¶ 27, Docket Entry 90-10 at 4; Hall Aff. ¶ 28, Docket Entry 90-9 at 4.) After Eaglin refused, Defendant Butler deployed his taser and then repeated his instructions. (Butler Aff. ¶¶ 34-36, Docket Entry 90-6 at 5; Jackson Aff. ¶ 29, Docket Entry 90-10 at 4; Hall Aff. ¶ 29, Docket Entry 90-9 at 4) Eaglin continued to resist and was tased again. (Butler Aff. ¶ 37, Docket Entry 90-6 at 5; Jackson Aff. ¶ 27, Docket Entry 90-10 at 4; Hall Aff. ¶ 28, Docket Entry 90-9 at 4.)

Eaglin has failed to provide any argument in response to the Detention Center Defendants' motion for summary judgment on this claim. Indeed, his responses to the defendants' motions focus on his medical claims. (Docket Entries 84 & 96.) As to his excessive force claim, Eaglin merely renews his discovery request for the video of the incident, which this court previously disallowed. (See Docket Entries 88, 89, & 105.) Moreover, it appears from other filings by Eaglin that the defendants assert that the video no longer exists. (See Docket Entries 125 & 129.) Although Eaglin requests that the court order that the transcript from his criminal trial on the assault charges be produced, the court observes that such a request was never the subject of a properly served discovery request and must be denied. In any event, as previously noted, the jury's verdict regarding Eaglin's conviction of these charges is controlling.

Thus, Eaglin has failed to present any evidence to refute the above described events. See Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to survive a properly supported motion for summary judgment]."); Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (stating that once a properly supported motion for summary judgment has been filed "the burden shifts to the nonmoving party to show that there are genuine issues of material fact" and the nonmoving party "may not rest upon mere allegations or denials of his pleading, but must come forward with specific facts showing that there is a genuine issue for trial") (internal citations and quotations omitted); see also Fed. R. Civ. P. 56(e)(2).[6] Therefore, the totality of the circumstances compels the conclusion that the force utilized by the defendants was applied in a good faith effort to maintain and restore discipline and was not an unnecessary and wanton infliction of pain. Cf. Orem, 523 F.3d at 446-47.

Moreover, even if the use of the taser could be found to be excessive under these circumstances, the court finds that the defendants are entitled to qualified immunity. Based on the above facts, the court finds that a reasonable officer could have believed that using the taser was lawful in light of the clearly established law and information that the defendants had at the time. See Orem, 523 F.3d at 448 (" 'Because police officers are often forced to make split-second judgments[ ] in circumstance[s] that are tense, uncertain, and rapidly evolving, the facts must be evaluated from the perspective of a reasonable officer at the scene, and the use of hindsight must be avoided.' ") (quoting Waterman v. Batton, 393 F.3d 471, 476-77 (4th Cir. 2005)). Accordingly, the defendants

---

[6] Although Eaglin provided witness "statements" in connection with a previously filed "motion of discovery," none of these statements are properly sworn or declared. See 28 U.S.C. § 1746 . Thus, to the extent these statements are offered in opposition to summary judgment, which is far from clear, they cannot be properly considered. Moreover, the statements largely address the issue of whether Eaglin attacked the prison officials, an issue which has been adjudicated by a jury beyond a reasonable doubt. See supra note 5.

are entitled to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

### 3. Medical Claims

The standard for reviewing medical claims of pretrial detainees is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). The government is required to provide medical care for incarcerated individuals. Estelle, 429 U.S. at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. Further, while the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). A

detainee's disagreement as to the type of care he should receive does not state a claim for deliberate indifference.  See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

### a.  Detention Center Defendants

In support of their motion, the Detention Center Defendants have presented evidence that Eaglin was treated for minor injuries following the incident in question.  Multiple x-rays were taken to investigate his complaints of jaw pain.  The x-rays were determined to be normal with no indication of a fracture.  (Med. Records, Docket Entry 90-3 at 20-21, 25.)  Further, medical staff examined Eaglin and ruled out the concern that he had experienced a seizure.  The medical records show that Eaglin received a substantial amount of medical care on January 18, 2008.  Following the tasing incident, Eaglin was immediately taken to the medical area where he received treatment and was returned to a cell on the first floor.  Later that day, following the "seizure" incident, medical staff was called to Eaglin's cell and determined that he should be taken to the medical area.  Ultimately, medical staff came to Eaglin to treat him in his cell rather than seeing him in the medical treatment area, due to the presence of female inmates in the medical treatment area at that time.  (Allen Aff. ¶¶ 18-19, Docket Entry 90-13 at 3-4; Hopkins Aff. ¶¶ 22-23, Docket Entry 90-8 at 4; Coleman Aff. ¶¶ 13-14, Docket Entry 90-5 at 2.)  Further, Eaglin was monitored by medical staff while he remained in full restraints over the next two days.  (Progress Notes, Docket Entry 90-3 at 11-12; Inmate Observation Form, Docket Entry 90-3 at 13-16.)  Also, on January 22, 2008, Eaglin was given a mental evaluation.  (Med. Records, Docket Entry 90-3 at 46-48.)  Eaglin has failed to introduce evidence refuting this.  Accordingly, no reasonable jury could find that the Detention Center Defendants were deliberately indifferent to Eaglin's serious medical needs.

### b. Nurse Christie

Any § 1983 claim asserted by Eaglin against Christie must also fail. Even if Christie were a state actor, which she disputes, Eaglin's claims against her sound in negligence, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The closest statement in Eaglin's Complaint regarding any alleged wrongdoing by Defendant Christie is that she did not contradict the doctor's conclusion that Eaglin had not suffered a seizure and did not insist upon him being treated in the medical area when the female inmates were there. These statements are insufficient to allege a claim of deliberate indifference, much less defeat a properly supported summary judgment motion.

Any state law claim of negligence or medical malpractice against Christie must also fail. Section 15-36-100(B) of the South Carolina Code requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina. This requirement specifically includes nurses. It is undisputed that Eaglin has failed to file an expert affidavit with his Complaint, and therefore he cannot proceed with a state law claim of negligence or medical malpractice against Defendant Christie.

### 4. Conditions of Confinement

Conditions of confinement of pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's proscription against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535, 537 n.16 (1979); see also Martin v.

Gentile, 849 F.2d 863, 870 (4th Cir. 1988).  However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment."  Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (citing City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 243-44 (1983) and Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir.1992)).  Therefore, the standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment.

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"  Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)).  To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk.  Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury).  Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition.  See Strickler, 989 F.2d at 1380-81.

### a. Diet

Eaglin contends that he was twice denied a proper diet for at least a week. These incidents apparently stemmed from the January 18 events in which Eaglin sustained an injury to his jaw during the altercation when he attacked two prison guards. Eaglin alleges that he was "forced to eat nothing" because he "couldn't get [his] mouth to open." (Compl., Docket Entry 1 at 12, 14, 17.) Eaglin was ultimately placed on a liquid diet due to his jaw injury. (Med. Records, Docket Entry 90-3 at 28-32, 43.) Medical staff monitored Eaglin's diet and weight throughout this period. (Id. at 19.) There is no evidence that the defendants were deliberately indifferent to Eaglin's serious needs during this time.

### b. Restraint

Eaglin also contends that he was unlawfully restrained or "hog tied" in his cell for three days and fell and injured himself as a result of the restraints. (Compl., Docket Entry 1 at 11, 14-15, 23.) In support of their motion, the defendants have presented evidence that this restraint of Eaglin, which included handcuffs, a "belly chain," and leg irons, resulted from the events of January 18 in which Eaglin assaulted two corrections officers. Their evidence shows that Eaglin was restrained following an incident where he exhibited violence and that restraint was necessary at the time to prevent him from harming other corrections officers. Eaglin has failed to produce evidence from which a reasonable jury could find that the restraints were not reasonably related to a legitimate governmental objective. See Bell v. Wolfish, 441 U.S. at 539. Further, Eaglin's allegation that he fell as a result of the restraints arises at most to a claim of negligence, which is not actionable under 42 U.S.C. § 1983. See Daniels, 474 U.S. at 328-36 & n.3; Pink, 52 F.3d at 78 ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly, 825 F.2d at 793-94.

**E.     Request for Institution of Criminal Charges Against Defendants**

Eaglin also seeks the imposition of criminal charges against certain defendants.  Because "[n]o citizen has an enforceable right to institute a criminal prosecution," Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990), such relief is not available.

**RECOMMENDATION**

For all of the foregoing reasons, the court recommends that the defendants' motions for summary judgment (Docket Entries 62 and 90) be granted.  In light of these recommendations, any remaining motions should be terminated.  (Docket Entries 99, 124, 125, & 129.)


Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 16, 2010
Columbia, South Carolina


*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).